IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

**KENNETH YOCKEY,** *et al.***,**

    **Plaintiffs,**

v.

**VOLKSWAGEN GROUP OF
AMERICA, INC., f/k/a VOLKSWAGEN
OF AMERICA, INC.,** *et al.***,**

    **Defendants.**

Case No.: 1:18-cv-1558
Fairfax Cir. Ct. Case CL18-15767

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendants Volkswagen Group of America, Inc. ("VW America") and Audi of America, LLC ("Audi America") (collectively "Defendants") hereby remove the action captioned *Yockey, et al. v. Volkswagen Group of America, Inc., et al.*, Case No.: CL18-15767, from the Circuit Court for the County of Fairfax, Virginia to the United States District Court for the Eastern District of Virginia, Alexandria Division. Pursuant to the requirements of 28 U.S.C. § 1446(a), the entirety of the state civil action file is attached hereto as **Exhibit 1**. As grounds for removal, Defendants state as follows:

### BACKGROUND

1.    On or about November 5, 2018, 136 Plaintiffs from Alaska, Alabama, Pennsylvania, North Carolina, Georgia, Mississippi, Virginia, Florida, Wisconsin, Illinois, Texas, Tennessee, Iowa, Michigan, Indiana, Arizona, Maryland, Massachusetts, New Hampshire, Maine, New Jersey, Vermont, Missouri, Ohio, Oregon, and Utah commenced this action against Volkswagen Group of America, Inc. ("VW America"), Volkswagen Aktiengesellschaft ("VW Germany"), Audi Aktiengesellschaft ("Audi Germany"), and Audi of America, LLC ("Audi

1

America") in the Circuit Court for the County of Fairfax, Virginia. Plaintiffs assert claims for fraud under the various states' laws (Alaska Count 1; Alabama Count 1; Georgia Count 1; Illinois Count 1; Indiana Count 1; Iowa Count 1; Maryland Count 1; Massachusetts Count 1; Michigan Count 1; Missouri Count 1; Ohio Count 1; Oregon Count 1; Utah Count 1) and under the various states' consumer protection laws (Alaska Count 2; Alabama Count 2; Georgia Count 2; Illinois Count 2; Indiana Count 2; Iowa Count 2[1]; Maryland Count 2; Massachusetts Count 2; Michigan Count 2; Missouri Count 2; Ohio Count 2; Oregon Count 2; Utah Count 2).

2. Plaintiffs' claims relate to their acquisition of certain Audi gasoline-powered vehicles (the "Subject Vehicles") allegedly equipped with a "defeat device," which 40 C.F.R. § 86.1803-01 defines as "an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use," subject to certain exceptions. (Compl. ¶¶ 172-84, 191, 194, 199, 203.) Throughout their Complaint, Plaintiffs allege that VW America, Audi America, and the other defendants employed the purported defeat device to exceed carbon dioxide emissions regulations. (*See, e.g., id.* ¶¶ 161, 165, 184, 199, 200, 203.) Plaintiffs seek actual, treble, punitive, and exemplary damages based on their allegations that they "would never have acquired the [Subject] Vehicle" had they known of the alleged defeat device at the time they acquired the Subject Vehicles. (*See, e.g., id.* ¶¶ 241, 707.)

3. Plaintiffs served the Complaint on VW America and Audi America through their registered agents on November 16, 2018. A copy of the state court pleadings, including the Proofs of Service, is attached hereto as **Exhibit 1**.

---

[1] Plaintiffs mistakenly captioned this count as being under the Kansas Consumer Protection Act. (*See* Compl. p. 94.)

4. To VW America and Audi America's knowledge, Plaintiffs have not yet served VW Germany or Audi Germany with process.

**TIMELINESS OF REMOVAL**

5. Defendants first received service of the Complaint on November 16, 2018. (*See* Ex. 1.) This Notice of Removal is filed within 30 days of that service and is therefore timely pursuant to 28 U.S.C. § 1446(b) ("The notice of removal . . . shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . ."); *see also Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("Accordingly, we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

**VENUE**

6. Plaintiffs originally brought this action in the Circuit Court of Fairfax County, Virginia. Therefore, venue lies in the Eastern District of Virginia, Alexandria Division pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and Local Civ. Rule 3.

**FEDERAL QUESTION JURISDICTION**

7. Notwithstanding that a complaint may be styled as arising under state law, federal courts look to whether the claim raises "a substantial question of federal law" to determine whether federal jurisdiction exists. *See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983) ("Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court . . . cases in which . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.").

8.     The Supreme Court has long emphasized the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997) ("[e]ven though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States" if the "right to relief under state law requires resolution of a substantial question of federal law" (quoting *Franchise Tax Bd. of Cal.*, 463 U.S. at 13)).

9.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S.Ct. 1059, 1065 (2013).

10.    Plaintiffs' Complaint meets that standard. As the Supreme Court recently reaffirmed, federal question jurisdiction is warranted when "a suit raising a state-law claim rises or falls on the plaintiff's ability to prove the violation of a federal duty." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016). Plaintiffs' Complaint meets that standard because its claims rise and fall on the federal questions of whether the Subject Vehicles contained a "defeat device" as defined by federal regulation, whether the Subject Vehicles complied with federal emissions regulations at the time of sale, and whether the Subject Vehicles cheated federal emissions tests. Each of Plaintiffs' claims premised on these allegations necessarily raises these federal questions, which are actually in dispute.

11. Plaintiffs' claims in this action are based on repeated allegations that Defendants' conduct – the so-called "Deceptive Emissions Scheme" – purportedly violated federal emissions laws and regulations:

- "The centerpiece of the Deceptive Emissions Scheme was the use of, in the [Subject Vehicles], a secretly embedded software algorithm *that was designed and installed to cheat emission tests* . . . thereby tricking and defrauding consumers into buying and/or leasing more than a hundred thousand [Subject Vehicles]" (Compl. ¶ 160 (emphasis added));

- Defendants "figured out a computer-driven methodology and technique *to cheat the emissions system*--simply run the vehicle in an eco-friendly compliant mode when being tested and in normal dirty mode when it was out on the roadway being driven by consumers" (*Id.* ¶ 161 (emphasis added));

- "When being driven on the road, [the Subject Vehicles] also emit more NOx and carbon monoxide than *the levels reported by emission testing*" (*Id.* ¶ 162 (emphasis added));

- Defendants made representations that "the vehicles had low emissions, got good gas mileage, and *complied with federal, state, and local emissions laws and regulations*" (*Id.* ¶ 166 (emphasis added));

- "*CO2 emissions standards have been increasing, putting increasing pressure on automobile manufacturers*" (*Id.* ¶ 173 (emphasis added));

- "*During emissions testing, which typically takes place on a dynamometer*, the car remains in 'warm-up' mode indefinitely" (*Id.* ¶ 176 (emphasis added));

- "*The defeat device* software is embedded in the Transmission Control Module" (*Id.* ¶ 178 (emphasis added));

- The alleged defeat device "allow[ed] the vehicles *to produce compliant emission results*" (*Id.* ¶ 179 (emphasis added));

- The alleged defeat device "essentially *tricked the Monroney testing* into giving the false impression that the [Subject Vehicles] had better mileage and lower emissions levels than they did." (*Id.* ¶ 182 (emphasis added));

- "By improving fuel economy *and complying with the promised CO2 emissions levels*, the Audi Gasoline Defendants found that the resulting driving experience was unacceptable in light of its advertising emphasis on performance" (*Id.* ¶ 184 (emphasis added));

5

- The Subject Vehicles were "*tested using federal certification tests*" (*Id.* ¶ 193 (emphasis added));

- The alleged vehicles "have been 'reflashed' with a software update as part of an emissions recall *that received regulatory approval*" (*Id.* ¶ 195 (emphasis added));

- "Long after Defendants became aware that many of their vehicles *were deliberately designed to cheat emissions tests*" (*Id.* ¶ 197 (emphasis added));

- Defendants "programmed the engine control computers in the [Subject Vehicles] with software *that effectively detects when the vehicle is undergoing emissions testing* . . . . When the car *is not being emissions tested* . . . *the engine control systems operate the engine and transmission in a manner that does not comply with EPA or CARB emissions requirements*" (*Id.* ¶ 199 (emphasis added);

- "[A]ny software 'repair' that reprograms the [Subject Vehicles] *to operate within legal emissions limits at all times (and not just during testing)* will cause the performance of the [Subject Vehicles] to suffer (*Id.* ¶ 207 (emphasis added));

- Plaintiffs allegedly suffered damages based on their payment for vehicles "*that complied with emissions requirements*" (*Id.* ¶ 208 (emphasis added));

- Defendants "fail[ed] to disclosure that the [Subject Vehicles] *utilize a Cheat Device to cheat emissions standards*" (*Id.* ¶ 210 (emphasis added));

- Defendants "concealed and expressly denied *the existence of problem [sic] with $CO_2$ emissions*" (*Id.* ¶ 220 (emphasis added))

- The alleged vehicles "were *able to 'pass' emission testing by way of deliberately-induced false readings*" (*Id.* ¶¶ 229; 264; 303; 338; 374; 411; 448; 484; 521; 558; 595; 633; 670 (emphasis added)); and

- Defendants "*would not have been able to obtain COCs or EOs for the sale of the Fraudulent Vehicles*" (*Id.* ¶¶ 241; 276; 315; 350; 386; 423; 460; 496; 533; 570; 607; 645; 682 (emphasis added).)

12. Although Plaintiffs make passing references to state and local regulations, Plaintiffs fail to identify a single applicable state or local regulation that Defendants allegedly violated. Instead, as shown by their allegations, Plaintiffs rely solely on alleged violations of federal emissions laws and regulations. For instance, Plaintiffs allege that the Subject Vehicles contain "defeat devices," (*see* Compl. ¶ 178), a term defined solely by federal regulation, *see* 40 CFR §

6

86.1803-01, and emit "excess CO2 emissions" (which are also governed by federal law, *see* 40 C.F.R. § 86.1801-01, *et seq.*). Likewise, Plaintiffs explicitly allege that Defendants defeated emissions certification and fuel economy testing, *see* 40 C.F.R. § 600.001, *et seq.*, and used the incorrect information obtained from that testing on the Monroney labels of the Subject Vehicles, the contents of which are governed by 49 C.F.R. § 575.401. (*Id.* ¶ 182.)

13.     Whether Plaintiffs' vehicles violated federal "[e]mission standards for new motor vehicles or new motor vehicle engines," 42 U.S.C. § 7521, raises a question of federal law. As the Court in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation* recognized, "[e]nforcement of the Clean Air Act before the first sale of new motor vehicles is the sole and exclusive prerogative of the federal government." 264 F. Supp. 3d 1040, 1050 (N.D. Cal. Aug. 31, 2017) (quoting *Sims v. State of Fla., Dept. of Highway Safety and Motor Vehicles*, 862 F.2d 1449, 1455 (11th Cir. 1989)). Although states may exercise their authority to regulate the operation and maintenance of vehicles within their borders (so-called "in use" authority), states may not "establish[ ] shortly-off-the-lot emission control requirements," because "the Clean Air Act's purpose of 'preventing obstruction to interstate commerce' would be defeated if 'a state or locality were free to impose its own emission control standards the moment after a new car is bought and registered.'" *Id.* at 1051 (quoting *Allway Taxi, Inc. v. City of New York,* 340 F. Supp. 1120, 1124 (S.D.N.Y.), *aff'd,* 468 F.2d 624 (2d Cir. 1972)). Because only the EPA has the authority to regulate vehicles when manufactured and when "shortly-off-the-lot," the question of whether the Subject Vehicles contained defeat devices, complied with federal emissions standards, and passed the requisite federal emissions standards at the time of sale or lease are questions of federal law.

14.     Accordingly, Plaintiffs' claims necessarily rely on alleged violations of federal law.

15. The federal questions Plaintiffs raise are also actually disputed. No Defendant has admitted to installing a "defeat device" in the Subject Vehicles – which are gasoline, not diesel, vehicles – no Defendant has admitted to any other violations of federal law related to the Subject Vehicles, nor has any regulatory body made any determination that the Subject Vehicles have prohibited defeat devices or otherwise do not comply with federal emissions standards.[2] As a result, Plaintiffs' claims necessarily raise actually disputed federal questions, including: 1) whether the Subject Vehicles contained a "defeat device" as defined by federal regulation, and 2) whether the Subject Vehicles actually complied with federal emissions standards. Plaintiffs cannot succeed on either cause of action without a resolution of these solely federal issues.

16. Finally, these substantial and disputed federal questions touch on a distinctly federal interest. A question is of "interest to the federal system as a whole" where "[d]etermination of the federal issues in this case could heal or injure [a] complex regulatory scheme" that has "the potential to affect many people" subject to its regulations. *Cty. of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1028 (N.D. Cal. 2005); *see also id.* at 1027–28 (focusing on "the importance of the federal issue" (collecting cases)). Such a "complex federal regulatory scheme"—namely, the EPA's comprehensive regulation of motor-vehicle emissions—is at stake here. *Volkswagen Wyoming*, 2017 WL 3816738, at *8 (noting that Congress broadly preempted state regulation of new motor vehicle emissions to prevent "the 'anarchic patchwork of federal and state regulatory programs' that could otherwise result if each State were free to adopt or enforce new motor vehicle emissions standards") (quoting *Motor Vehicle Mfrs. Ass'n* v. *N.Y. State Dep't of Envtl. Conservation*, 17 F.3d 521, 526 (2d Cir. 1994) and *Engine Mfrs. Ass'n* v. *EPA*, 88 F.3d 1075, 1079

---

[2] The vehicles at issue in this action are not the same vehicles that are the subject of the well-publicized *diesel* emissions issues, for which Defendants have acknowledged that a defeat device existed. Instead, the Subject Vehicles in this action are the different *gasoline-powered* vehicles.

(D.C. Cir. 1996)).  It is not difficult to envision the chaos that could result from different state courts reaching different conclusions about whether the affected vehicles are legal to operate or resell.  And unlike their state-court counterparts, "federal courts are particularly familiar with the federal regulatory scheme" governing environmental compliance.  *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E.* v. *Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 863 (E.D. La. 2014).  Thus, there is a strong federal interest—and no countervailing state interest—in hosting this litigation.

17.     Federal courts should resolve the federal questions inherent in Plaintiffs' claims.  Allowing a federal court to address these federal questions would be consistent with the federal/state balance contemplated by the CAA because the questions "raise significant federal issues."  *Grable*, 545 U.S. at 312.  The "cornerstone" of the CAA is the exclusive power of the federal government to regulate new vehicle engine emissions to prevent "the spectre of an anarchic patchwork of federal and state regulatory programs" governing vehicle emissions.  *Engine Mfrs. Ass'n*, 88 F.3d at 1079 (quoting *Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979)).  The "clear and undisputed intent of Congress" was to create a uniform federal scheme thereby "avoiding a chaotic situation from developing where vehicle manufacturers would be subject to 50 different sets of requirements relating to emissions controls."  *In re Applications to Quash Subpoenas Duces Tecum Issued by the Office of the Attorney Gen. of the State of N.Y.*, 709 N.Y.S.2d 1, 9 (N.Y. App. Div. 1st Dep't 2000) (alterations, citations, and internal quotation marks omitted).  Thus, permitting a federal court to determine whether Defendants violated the CAA will not upset the balance between state and federal courts for the simple reason that a federal court is best positioned to interpret federal law.  In fact, a putative class action complaint has already been filed by the Plaintiffs' Steering Committee in the federal multi-district litigation styled as *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, 3:15-

md-02672-CRB (N.D. Cal.), alleging class-wide claims concerning most of the Subject Vehicles.

18.     Here, Plaintiffs' rights to recovery turn on substantial, disputed questions of federal law regarding federal emissions standards.  Only by resolving these questions at the federal level can the congressionally established federal-state balance be properly maintained.[3]

**DIVERSITY JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT**

19.     Alternatively, this Court may exercise diversity jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA").  Under CAFA, both class actions and "mass actions" may be removed to this Court provided that minimal diversity exists between the Plaintiffs and Defendants and the amount in controversy exceeds $5 million.  Here, Plaintiffs assert a mass action against Defendants, minimal diversity exists between the parties, and Plaintiffs demand more than $5 million in damages.  Therefore, this action satisfies the requirements for diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d).

20.     First, Plaintiffs' Complaint satisfies CAFA's "mass action" requirement.  Under 28 U.S.C. § 1332(d)(11)(B)(i), a "mass action" is a "civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  *Id.*  Here, 136 plaintiffs assert various claims against Defendants to be tried jointly.  (Compl. ¶¶ 1-116.)  As Plaintiffs' Complaint makes clear, Plaintiffs allege that the claims of each individual Plaintiff involve common questions of law and fact arising out of what Plaintiffs have alleged to be the "Deceptive Emissions Scheme."  (*See* Compl. ¶¶ 159-226.)  Therefore, Plaintiffs assert a "mass action" against Defendants.

---

[3]     Plaintiffs have further emphasized the federal nature of their claims by stating their desire to amend their Complaint to include a claim under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.  (*See* Exhibit 2, Plaintiffs' Proposed Amended Complaint ¶¶ 227-239).)  Because Plaintiffs seek more than $50,000 in damages for this claim, this Court may exercise federal question jurisdiction over those claims pursuant to 15 U.S.C. § 2310(d)(1)(b).

21. Under 28 U.S.C. § 1332(d)(11)(A), "for purposes of [28 U.S.C. § 1332] and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10)" of 28 U.S.C. § 1332(d). Thus, despite not explicitly styling their Complaint as a putative class action, Plaintiffs' Complaint remains removable as a putative class action under CAFA because Plaintiffs assert claims against Defendants as a mass action based on purported common questions of law and fact concerning the "Deceptive Emissions Scheme."

22. Second, minimal diversity exists between Plaintiffs and Defendants. Under CAFA, such minimal diversity exists because certain Plaintiffs in this lawsuit are "citizen[s] of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). As alleged in the Complaint, VW America is incorporated under the laws of New Jersey and has its principal place of business in Virginia, making it a citizen of those two states. (Compl. ¶ 118.) Audi America is organized under the laws of Delaware and has its principal place of business in Virginia, which renders it a citizen of those two states for the purpose of CAFA. *See* 28 U.S.C. § 1332(d)(10) ("For the purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."); (Compl. ¶ 120). VW Germany and Audi Germany are both organized under the laws of Germany with their principal places of business in Germany. (Compl. ¶¶ 117, 119.)[4]

23. Accordingly, the minimal diversity requirement is satisfied because Defendants are citizens of Virginia, New Jersey, Delaware, and Germany, and 130 Plaintiffs are citizens of states other than Virginia, New Jersey, Delaware, or Germany. (Compl. ¶¶ 1-116.)

---

[4] While VW America and Audi America agree with Plaintiffs' allegations that VW Germany and Audi Germany are German corporations with their principal places of business in Germany, VW America and Audi America explicitly deny Plaintiffs' further allegations that VW Germany and Audi Germany may be served with process through VW America. (*See* Compl. ¶¶ 117, 119.)

24. Finally, Plaintiffs admit that they seek more than $5,000,000 in damages, which satisfies 28 U.S.C. 1332(d)(6). (Compl. ¶ 707 ("Plaintiffs collectively seek damages in excess of $5 million.").)

WHEREFORE, the case now pending in the Circuit Court for Fairfax County, Virginia, Docket No. CL18-15767, is hereby removed to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446.

Dated: December 17, 2018          Respectfully submitted,

VOLKSWAGEN GROUP OF AMERICA, INC.
AUDI OF AMERICA, LLC

/s/ Kenneth W. Abrams
Terrence M. Bagley, Esquire (VSB No. 22081)
Christopher E. Trible, Esquire (VSB No. 48847)
Kenneth W. Abrams, Esquire (VSB No. 78216)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia  23219
Telephone: (804) 775-1000
Facsimile: (804) 698-2008
tbagley@mcguirewoods.com
ctrible@mcguirewoods.com
kabrams@mcguirewoods.com

John D. Wilburn, Esquire (VSB No. 41141)
Heather Britton Chaney, Esquire (VSB No. 78313)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia  22102
Telephone:  (703) 712-5000
Facsimile:  (703) 712-5228
jwilburn@mcguirewoods.com
hchaney@mcguirewoods.com

Michael H. Steinberg (*pro hac vice* forthcoming)
Sullivan & Cromwell LLP
1888 Century Park East, Suite 2100
Los Angeles, CA  90067

Tel.:  (310) 712-6600
Fax:  (310) 712-8800
steinbergm@sullcrom.com

Julia M. Jordan (*pro hac vice* forthcoming)
Sullivan & Cromwell LLP
1700 New York Avenue, NW, Suite 700
Washington, DC  20006
Tel.:  (202) 956-7500
Fax:  (202) 293-6330
jordanjm@sullcrom.com

William B. Monahan (*pro hac vice* forthcoming)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY  10004
Tel.:  (212) 558-4000
Fax:  (212) 558-3588
monahanw@sullcrom.com

*Counsel for Defendant Volkswagen Group of America, Inc. and Audi of America, LLC*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on December 17, 2018, a true and correct copy of the foregoing instrument was sent via Federal Express and e-mail to:

    Charles Miller, Esquire
    Eric Pearson, Esquire
    HEYGOOD, ORR & PEARSON
    6363 North State Highway 161, Suite 450
    Irving, Texas 75038
    Telephone: (214) 237-9001
    Facsimile: (214) 237-9002
    charles@hop-law.com
    eric@hop-law.com


                          /s/ Kenneth W. Abrams
                          Kenneth W. Abrams